### Thomas E. Smith, Appellee, v. Moffat Coal Company, Appellant.

1. MINES AND MINERS ACT—*construed with respect to the opening of cross cuts.* The legislature did not intend that entries in a mine might be extended to an indefinite distance without the opening up of new cross cuts as the work advanced, provided no room was turned off at the entry; so to construe this act would be, to an extent at least, to subvert the plain object in view. Cross cuts should be opened at intervals of sixty feet as entries are extended.

2. MINES AND MINERS ACT—*what evidence competent upon question of notice. Held,* that it was competent to show the condition of the air in the entry of a mine at a time some time prior to the accident in suit; such evidence tending to show notice on the part of the operator.

3. EVIDENCE—*when erroneous admission will not reverse.* The admission of incompetent evidence which bears solely upon the matter of damages will not reverse where no contention is urged that the damages awarded are excessive

Action in case for personal injuries. Appeal from the Circuit Court of Randolph county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909.

WISE, McNULTY & KEEFE, for appellant; MASTIN & SHERLOCK, of counsel.

WEBB & WEBB and RALPH E. SPRIGG, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee was injured by an explosion of gas, while working in the coal mine of appellant, near Sparta, Illinois, brought suit and recovered a judgment against appellant for $2000.

There were six counts in the declaration, upon which the case was tried. The first was based on appellant's common law liability to furnish appellee with a safe place to work. The second charged appellant with a wilful failure to maintain currents of fresh air throughout the mine, sufficient for the health and safety of

the men and animals employed therein, and to keep
in circulation in passing a given point, the quantity of
air provided for by statute. The third charged that
the back south entry at the time of the injury, had
been developed more than sixty feet beyond the last
cross cut, and that during said development, appellant
wilfully failed to open other cross cuts not more than
sixty feet apart, between the face of the entry and the
last cross cut, connecting therewith, by reason whereof
the air current in said entry failed to reach the work-
ing face thereof and gas and deleterious matters col-
lected, which became ignited and exploded. Other
counts charged the failure of appellant's mine exam-
iner to properly examine the mine and record the re-
sult thereof, as provided for by statute.

Appellant claims that appellee was not entitled to re-
cover under the evidence in the case; that two instruc-
tions given for appellee were erroneous, that certain
evidence admitted for appellee was improper and that
the verdict is excessive.

Two of the entries in appellant's mine, known as the
main south entry and the back south entry, running
parallel with each other, had been driven about one-
fourth of a mile from the shaft, were separated from
each other by a pillar of coal about thirty feet in thick-
ness, and were connected at intervals of about sixty
feet by cross cuts. Currents of air were kept circulat-
ing by means of fans through these entries, and other
parts of the mine, where the men were working. By
this means the air was forced down the back south
entry and through the last cross cut to the main south
entry. As the entries were extended, a new cross cut
would be made and the others being closed, the fresh
air would be carried close to the face of the entry and
gas and other impurities carried out. At the time
of the injury, however, which occurred March 4, 1908,
the back south entry had been carried about 106 feet
beyond the last cross cut, and while a cross cut had
been started sixty feet south of the last cross cut in

the main south entry, it was not cut through. For several days prior to February 28, 1908, it had been noticed that the air in the back south entry was foggy, smoky and still, and that there was no current of air in that portion of the entry. On the date last named the mine shut down on account of some contention between the miners and appellant, and remained idle until the day of the injury. During the idle days, however, appellee and a miner named Reed were doing timbering in the mine and the fan was kept running. On March 4 the mine examiner went into the mine and discovered a fall of slate in the back south entry about twelve feet from the face. On that day appellee and Reed started to the face of that entry, for the purpose of loading coal in a car, which they pushed in front of them. When near the edge of the fall of slate at a point between sixty and seventy feet south of the last cross cut, an explosion of gas occurred by which appellee was severely injured.

It is the theory of appellant that the gas accumulated in a pocket in the roof after the mine examiner had made his examination that morning and caught fire from the lamp carried by appellee or Reed; while it is contended by appellee, that had the cross cut been open a current of air would have been circulating and the gas removed, thereby preventing the explosion. We are of opinion the proofs plainly sustain appellee's cause of action under the second and third counts of his declaration, and as the verdict was a general one, it will be unnecessary for us to discuss questions arising upon the other counts.

Section 19 of the Act in regard to Mines and Miners provides, "Throughout every coal mine, there shall be maintained currents of fresh air, sufficient for the health and safety of all men and animals employed therein, and such ventilation shall be produced by a fan or some other artificial means." Subdivision (a) prescribes the quantity of air that shall be kept in circulation and further provides, "said currents shall be

forced into every working place throughout the mine, so that all parts of the same shall be reasonably free from standing powder smoke and deleterious air of every kind.''

The evidence in this case was such that the jury might reasonably conclude therefrom that appellant had not forced a current of air sufficient to meet the statutory requirements into the working place of appellee. Subdivision (g) of said section provides, ''Cross cuts shall be made not more than 60 feet apart and no room shall be opened in advance of the last open cross cut.''

It is uncontested that appellant had failed to open a cross cut at or within the distance of 60 feet from the last cross cut, and a preponderance of the evidence shows that for some time the air had been in bad condition and was not freely circulating towards the face of the entry; that about two weeks prior thereto, appellee and Reed had asked the mine manager if it was not about time to put in a cross cut and he had said that he would see about it; and that had a cross cut been made at the statutory distance, and a current of air forced through, the deleterious air would have been removed.

Appellant takes the position that while the statute provides that ''cross cuts shall be made not more than 60 feet apart,'' yet in the same connection it further provides that ''no room shall be opened in advance of the last open cross cut;'' that the whole sentence must be taken together and when so read shows that the statute has relation to the care and protection of miners in the development of rooms and not in the development of entries; that ''there is no statute which requires the mine operator in the development of entries to open a cross cut as soon as the entry is driven 60 feet past the last cross cut;'' that the charge in the declaration that ''defendant wilfully failed to open other cross cuts not more than 60 feet apart, between the face of the entry and the last cross cut,'' if proven,

would not constitute a violation of the statute. In this case no room had been opened off of the back south entry beyond the last cross cut and if appellant's contention as to the law is correct, appellee is not entitled to recover under the third count of the declaration.

The constitution of this State provides that, "It shall be the duty of the General Assembly to pass such laws as may be necessary for the protection of operative miners, by providing for ventilation when the same may be required and the construction of escapement shafts or other such appliances, as may secure safety in all coal mines," etc. The title of the Act of the General Assembly here relied upon is, "An act to revise the laws in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein."

It is a matter of general knowledge and is also specially proven in this case, that the opening of cross cuts between entries in a mine, develops and directs air currents forced by the fan through the mine and removes deleterious air; that the opening of the same greatly promotes the protection of miners from injuries from bad air, caused by explosion of gases or otherwise. With these matters in view we must assume that the legislature in providing for the opening of cross cuts, intended to protect miners and if it should be held that an entry might be extended to an indefinite distance, without opening up a new cross cut, as the work advanced, provided no room was turned off of the entry, the object of the law would be to a considerable extent subverted.

We are of opinion that the meaning and intent of the law is that cross cuts shall be opened up at intervals of 60 feet as entries are extended, and that the facts in this case entitle appellee to a verdict in his favor upon the third count of the declaration.

Appellant criticises the first instruction given for appellee on the ground that it directs a verdict in favor of appellee in case the jury find at and immediately

before his injury he was in the exercise of reasonable and ordinary care and caution for his own safety. An examination of the instruction however shows that it was intended to be applied only to the question of the care and caution exercised by appellee, before and at the time of his injury, and only sought to tell the jury what they might find from the existence of certain conditions upon that subject, and did not attempt to direct a general verdict.

The other given instruction, challenged by appellant, was the fifth, which is as follows:

"The court instructs the jury as to the third count of plaintiff's declaration, the statute of Illinois at the time of plaintiff's injury provided as follows: 'Cross cuts shall be made not more than 60 feet apart.'"

This instruction is in the language of the statute and under our interpretation of the law, as above set forth, was wholly proper.

Appellant insists the court erred in permitting a witness for plaintiff to answer the question, "What was the condition of the air in your entry on February 28th," the answer being, "The air was bad on the 28th of February, near the working place." The criticism is that the time was too remote to be of any value in determining whether or not appellant failed to supply a proper quantity of air on the day appellee was injured. There was evidence, however, tending to show the existence of bad air in the entry both before and after that date, and the question was proper for the purpose of determining whether or not appellant should in the exercise of ordinary care, have had notice of the conditions which existed. Objection is also made that two physicians, called for plaintiff, who made an examination of him after he had received his injuries, testified as to the condition of his hearing and of the strength of the grip of his hand, upon the ground that the physicians had to depend for their knowledge of the same upon appellee's statement. While the testimony of these witnesses was admitted, the court said

in reference to the same, "As to the test of hearing, the statement may be disregarded, as to the other test the jury will take what the doctor discovered through his own efforts, without any statement from plaintiff." And again, "The jury will regard only such testimony of the doctor as to what he himself observed, and not what the plaintiff told him." But even if the admission of this testimony had not been properly guarded by the court, it could not have injured appellant in this case, for the reason that it was solely directed to the question of the damages to be recovered, which in this case, considering the undisputed injuries, were by no means excessive. No reason calling for a reversal of the judgment in this case appears to us and the same will therefore be affirmed.

*Affirmed.*